IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAY QUIROZ,

    Plaintiff,

v.                                                           No. CV 09-311 MCA/CEG

COUNTY OF EDDY AND ITS BOARD
OF COUNTY COMMISSIONERS;
EDDY COUNTY JAIL AND ITS MEDICAL
SERVICES PROVIDER; MEDICAL NURSE
TODD; THE MUNICIPALITY OF CARLSBAD;
THE MAYOR OF CARLSBAD; and CARLSBAD
CITY MANAGER,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on April 1, 2009, by Defendants County of Eddy, the Board of County Commissioners for the County of Eddy, the Eddy County Sheriff, the Eddy County Jail, the Administrator of the Eddy County Jail, Bea Denninger (identified by Plaintiff as "Sgt. Bea"), Eddy County Detention Center Medical Services Provider Todd Bannister (identified by Plaintiff as "Medical Nurse Todd"), the Municipality of Carlsbad, the Mayor of Carlsbad, and the Carlsbad City Manager.  See docket no. 6.  Defendants asserts that: (i) Ray Quiroz ("Mr. Quiroz" or "Plaintiff") has filed this civil rights case after the statute of limitations expired on both his federal and state law causes of action and (ii) Mr. Quiroz's claims should be dismissed with prejudice.  See id. at 3-4.  I agree with respect to the state law claims, and, for the reasons below, recommend that Defendants' Motion to Dismiss be granted in part and denied in part.

**Background**

On or about March 2, 2009, Mr. Quiroz filed his original pro se complaint in the Fifth Judicial District Court for the State of New Mexico, County of Eddy, which was assigned Cause Number CV 2009-132.  See docket no. 1, exhibit A ("Plaintiff's original complaint").  On March 30, 2009, Defendants removed the case from the Fifth Judicial District Court to the United States District Court for the District of New Mexico.  See docket no. 1.  On March 30 and 31, 2009, Defendants requested a jury trial in this case.  See docket nos. 3 and 4.  Thereafter, the case was referred from United States District Judge M. Christina Armijo to the undersigned "to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  Docket no. 7.

On April 1, 2009, Defendants filed their Motion to Dismiss.  See docket no. 6.  Defendants contend Plaintiff's original complaint should be dismissed because Mr. Quiroz has failed to file the lawsuit within the applicable statute of limitations.  See id.  Specifically, Defendants contend the statute of limitations on a § 1983 in New Mexico is three years and the statute of limitations on a claim against a governmental entity or its employees pursuant to the New Mexico Tort Claims Act is two years.  See id. at 3.  Relying on February 23, 2006, as the date Mr. Quiroz's claims began to accrue for purposes of the statute of limitations, Defendants contend Plaintiff's March 2, 2009 filing was approximately seven days late with respect to the federal claims and over a year late on the state claims.  See id. at 3-4.

On May 18, 2009, Plaintiff filed a response in opposition to Defendants' Motion to Dismiss.  See docket no. 11.  Plaintiff contends, among other things, that his "swearing of the complaint on February 13, 2009, and mailing during the week of February 22, 2009, and filing on March 2, 2009, show his good faith attempt to effectuate service of process before March 28,

2009,[1] the time limitation as [Mr. Quiroz] understood it." Id. at 3. Plaintiff further argues that his case should not be dismissed because equitable tolling applies. Id. at 2-3. Finally, Mr. Quiroz asserts that it "is well established that summary judgments are not favored," and on that basis, Defendants' Motion to Dismiss should be denied. Id. at 4-5. On May 21, 2009, Defendants filed a reply to Mr. Quiroz's response, wherein they argue that equitable tolling does not apply and that Plaintiff's original complaint should be dismissed in its entirety. See docket no. 14.

## Allegations in Plaintiff's Original Complaint

Plaintiff's original complaint indicates that he seeks damages for:

> a) deprivation of right to adequate medical treatment that resulted in digital amputation on the Plaintiff's left foot . . . in violation of the due process clauses of the New Mexico Constitution, Article II, Section 18, and, U.S. Constitutional 5th and 14th Amendments; and
>
> b) the deliberate indifference shown to [Mr.] Quiroz's serious medical needs that resulted in the amputation, pain, suffering, and mental anguish in violation of the protection from cruel and unusual punishment clauses of the New Mexico Constitution, Article II, Section 13, and, the U.S. Constitution's 8th Amendment.

Id. at 1.[2] The Court construes Plaintiff's original complaint, with Defendants' concurrence,[3] as a complaint for damages pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. The "prayer" of Plaintiff's original complaint requests $250,000.00 in compensatory damages "for

---

[1] Plaintiff represents to the Court that he "sought the assistance of counsel," and that Anthony Rascon, a licensed attorney in the State of New Mexico, "filed [a] Notice of Claim with Risk Management on March 28, 2006," in addition to advising Plaintiff "that he had three years to the day to commence this action." Id. at 2.

[2] Plaintiff's original complaint also alleges "the actions of the Defendants' deprivation of adequate medical treatment and deliberate indifference to Plaintiff's pain and suffering, emotional distress, and mental anguish were under color of state law." Id. at 1-2.

[3] See docket no. 6 at 2-3.

the amputation caused by the Defendants' deprivation of adequate medical treatment and the inadequate training of the Eddy County Jail personnel in medical procedures," as well as $750,000.00 in punitive damages "for the abuse and taunting of the Plaintiff and the deliberate indifference shown by the Eddy County Jail . . . to Plaintiff's pain and suffering that resulted in his mental anguish and emotional distress." Id. at 7.

Factually, Plaintiff's original complaint alleges that on February 14, 2006, while Mr. Quiroz was in pre-trial detention at the Eddy County Jail in Carlsbad, "he was bitten or stung on the foot by an insect of unknown species." Id. at 2. Mr. Quiroz alleges he was initially treated with an antibiotic, but that on February 16, 2009, he was still "experiencing pain, fever, and dizziness."[4] Id. Plaintiff contends that Medical Services Provider Todd Bannister ("Mr. Bannister") examined his foot, took pictures with of the foot with a digital camera, and informed Mr. Quiroz that "his condition would get worse before it would get better," but did not perform any medical procedures or provide medications. Id. at 2-3. Between February 16 and February 22, 2006,[5] Plaintiff alleges he complained about "the extreme pain and suffering" in his foot to

---

[4] Plaintiff alleges that "on or about the third day after [his] ongoing complaint about his foot becoming more infected and the pain becoming more unbearable," Eddy County Jail Administrator Bea Denninger ("Ms. Denninger") came to Mr. Quiroz's cell "and led him to believe he was to see medical staff." Id. at 3. Plaintiff contends that Ms. Denninger "demanded that he get off his bunk and walk." Id. After explaining to Ms. Denninger that he could not walk and required a wheelchair as a result of the pain and swelling, according to Mr. Quiroz, Ms. Denninger "continued to be verbally abusive" and "began to threaten [Mr.] Quiroz with pepper spray if he did not get off his bunk." Id. Mr. Quiroz states in his original complaint that he then "decided to do whatever it took to see medical staff," but that "officers led him to a padded cell," which Plaintiff claims was punishment for demanding medical attention. Id.

[5] On February 18, 2006, Plaintiff alleges that his medical condition was steadily worsening with "[h]is foot oozing pus." Id. at 4. Plaintiff alleges "his feverish tremors and diarrhea led him to believe his life was in danger and he demanded that he be taken to a hospital." Id. According to Plaintiff, "[b]ecause of his loud demands, he was not examined, no medication was given, and no medical procedure performed." Id. On February 20, 2006, Plaintiff alleges his condition had not improved, the pain and suffering continued, and he again

jail staff on multiple occasions to no avail, and that the condition continued to get worse.  See id. at 3-5.  Finally, on February 22, 2006,[6] Plaintiff alleges he was taken to the hospital and that the attending physician contacted the Eddy County Jail and "angrily demanded" the reason why Plaintiff had not been treated.  Id. at 5.  Plaintiff contends that on February 23, 2006, the doctor informed him that his toe needed to be amputated in order to save his foot, and that a shunt "was surgically implanted in [Mr.] Quiroz's chest so that he could undergo a six-week regimen of intravenous antibiotics" to combat the methicillin-resistant Staphylococcus aureus ("MRSA") infection.  Id.

      Plaintiff's original complaint further alleges that "upon return to the Eddy County Jail to recuperate, the Doctor ordered that [Mr.] Quiroz be given a walker to aide him to the toilet facilities and shower," but that Eddy County Jail personnel denied Plaintiff the walker, "which resulted in a number of falls as "jail staff . . . were deliberately indifferent to [Plaintiff's] pain, suffering, and humiliation."  Id. at 6.  Plaintiff further contends that "[d]uring the period after the amputation, Mr. Bannister began to verbally abuse and taunt [Plaintiff] by stopping at his cell

---

demanded to be taken to a hospital.  Id.  Mr. Quiroz maintains that although Mr. Bannister again took pictures "of the grossly swollen foot oozing pus," no medical procedure was performed and no medication was administered.  Id.  On February 22, 2006, Plaintiff alleges his "fever, tremors, diarrhea, [and] grossly swollen and inflamed foot "caused him extreme emotional distress and mental anguish in fear of losing his life."  Id.  Plaintiff asserts his "toe became necrotic and began to blacken . . . [as] [t]he blood borne pathogens from the infection had caused great illness to [Mr.] Quiroz."  Id.

    [6] Prior to being taken to the hospital, Mr. Quiroz alleges that Mr. Bannister was "again only going to photograph the foot," but Plaintiff refused and again demanded to be taken to a hospital for treatment."  Id.  Plaintiff alleges Mr. Bannister told Plaintiff that since Mr. Quiroz refused to let him photograph the foot, Mr. Bannister "would not bother to treat him."  Id.  Plaintiff alleges he continued "to complain loudly and continuously in belief that he was fighting for his life."  Id. at 5.  Plaintiff alleges that after a shift change, "Lieutenant Barnes, shift commander, was called to look at the foot and immediately ordered [Mr.] Quiroz to be taken to a hospital."  Id.

and yelling, 'What's up, punk!?' or 'How do you like me now!?' or 'Kiss my ass, punk!'" Id. Plaintiff's original complaint concludes by stating that Mr. Quiroz "endured four weeks of . . . heinous treatment while undergoing intravenous antibiotic treatment in the Eddy County Jail while surrounded by hostile and indifferent persons." Id.

**Legal Standard**

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id.

Since Plaintiff is not an attorney, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Therefore, "if the court can reasonably read the pleadings to state a claim on which Plaintiff could prevail, it should do so despite [Plaintiff's] failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Id.  At the same time, it is not the proper function of the district court to "assume the role of advocate for the pro se litigant."  Id.

**Analysis**

**A.     Plaintiff's Federal Law Claims (42 U.S.C. § 1983)**

A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983.  See Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).  The statute of limitations is drawn from the personal injury statute of the state in which the federal district court sits.  Wilson v. Garcia, 471 U.S. 261, 269 (1985).  Thus, the State of New Mexico's three-year personal injury statute applies to Mr. Quiroz's § 1983 claims in this case.[7]  See Mondragon, 519 F.3d at 1082 (citing Wilson, 471 U.S. at 280).

Defendants assert that Mr. Quiroz has failed to bring his original complaint within the applicable three year statute of limitations for § 1983 actions brought in New Mexico.  Defendants state that "[a]ccording to the Plaintiff, on February 23, 2006, the Plaintiff was forced

---

[7] "Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983 . . . . [a]s such, state law governs the application of tolling in a civil rights action."  Alexander v. Oklahoma, 382 F.3d 1206, 1217 (10th Cir. 2004) (internal quotations omitted).  Under extraordinary circumstances "in which state statutes of limitations eradicate rights or frustrate policies created by federal law" "federal courts possess the power to use equitable principles to fashion their own tolling provisions."  Id. at 1217 n. 5 (internal quotations omitted).

to have a toe amputated supposedly as a result of improper medical care and treatment at the [Eddy County] Detention Center prior to that date." Docket no. 6 at 2. Defendants' Motion to Dismiss relies on the alleged date of amputation as the time when the statute of limitations began to run on February 23, 2006, and as such, Defendants contend that Plaintiff's March 2, 2009 filing was approximately one week late. See id. at 2-3.

Plaintiff's original complaint, however, alleges that on February 23, 2006, "[a] shunt was surgically implanted in [Mr.] Quiroz's chest so that he could undergo a six-week regimen of intravenous antibiotics – two bags daily – to combat a MRSA infection acquired during the deprivation of any medical treatment." Id. at 5. Additionally, Plaintiff's original complaint states:

> Upon return to the Eddy County Jail to recuperate, the Doctor ordered that [Mr.] Quiroz be given a walker to aide him to the toilet facilities and shower. Eddy County Jail Personnel denied [Plaintiff] the walker which resulted in a number of falls and required [Plaintiff] to crawl from bunk to toilet to shower without assistance from jail staff who were deliberately indifferent to [Mr.] Quiroz's pain, suffering, and humiliation.

Id. at 6. Plaintiff also alleges that "during the period after the amputation," Medical Services Provider Mr. Bannister verbally abused and taunted Plaintiff before "word of the abuse" eventually reached the Sheriff, "who made it so that Todd had to avoid [Plaintiff's] cell." Id. Finally, Plaintiff alleges he "endured four weeks of . . . heinous treatment while undergoing intravenous antibiotic treatment in the Eddy County Jail while surrounded by hostile and indifferent persons." Id. Thus, Plaintiff's original complaint specifically alleges improper medical care and treatment at the Eddy County Detention Center both prior to and after the alleged February 23, 2006 amputation of Mr. Quiroz's toe.

"The accrual date of a § 1983 cause of action is a question of federal law that is not

resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). Thus, accrual under § 1983 is governed by "federal rules conforming in general to common law tort principles." Id. Accrual occurs "when the plaintiff has a complete and present cause of action." Id. (internal quotations omitted). This phrase means when the plaintiff "can file suit and obtain relief." Id. (internal quotations omitted). Here, the § 1983 cause of action in Plaintiff's original complaint clearly includes allegations of misconduct after February 23, 2006, therefore, the undersigned finds Mr. Quiroz had "a complete and present cause of action" weeks after February 23, 2006. Given this finding, as well as: the fact that Plaintiff's complaint is sworn to on February 13, 2009; the assertion made by Plaintiff that he mailed the complaint "the week of February 22, 2009;"[8] and the Court's liberal construal of Plaintiff's pro se pleadings,[9] the undersigned concludes that Plaintiff has plead enough facts to state a claim for relief pursuant to § 1983 that is "plausible on its face." The Court can reasonably read Mr. Quiroz's original complaint to state a claim on which he could prevail, despite his pro se status, therefore, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to Plaintiff's § 1983 claims should be denied.

**B.     Plaintiff's State Law Claims (N.M. Tort Claims Act)**

The New Mexico Tort Claims Act states that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless . . . commenced within two years." NMSA 1978, § 41-4-15(A). Though I have found that based on the allegations in Plaintiff's original complaint, the statute of limitations did not begin to run in this case until shortly after

---

[8] Under the prison "mailbox rule," the complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court. See Houston v. Lack, 487 U.S. 266 (1988).

[9] See Hall, 935 F.2d at 1110.

9

February 23, 2006, the two year statutory period to file under the New Mexico Tort Claims Act appears to have run in this case.  "The purpose of a statute of limitations is to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims."  Garcia ex rel. Garcia v. La Farge, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995).

There are no allegations or claims raised in Plaintiff's original complaint that are purported to have occurred more than four to six weeks after February 23, 2006.  See Plaintiff's original complaint at 1-7.  Plaintiff, however, asserts he "would be able to demonstrate good cause for equitable tolling."  Docket no. 11 at 2.   Specifically, Plaintiff contends that he "sought the assistance of counsel" and that an attorney licensed to practice in New Mexico "advised [Mr.] Quiroz that he had three years to the day" from March 28, 2006, to file the lawsuit.  Id.

The issue of equitable tolling is governed by state law.  Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995).  Equitable tolling is a non-statutory tolling theory which suspends a limitations period.  See Gathman-Matotan Architects and Planners, Inc. v. State Dep't of Fin. & Admin., 109 N.M. 492, 494, 787 P.2d 411, 413 (1990).  Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.  Martinez v. Orr, 738 F.2d 1107, 1110 (10th Cir. 1984).  In this case, I find that the alleged misinformation given to Mr. Quiroz from an attorney was not "an extraordinary event" beyond Plaintiff's control and should not toll the statute of limitations on Plaintiff's state law claims for close to a year.  Thus, I find Defendants' Motion to Dismiss should be granted as to Mr. Quiroz's New Mexico Tort Claims Act claims because Plaintiff failed to comply with the applicable two-year statue of limitations.

**WHEREFORE,**

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (docket no. 6) be **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER RECOMMENDED** that the claims brought pursuant to the New Mexico Tort Claims Act in Ray Quiroz's original complaint should be **DISMISSED WITH PREJUDICE**. Defendant's Motion to Dismiss should be **DENIED**, however, with respect to the claims in Plaintiff's original complaint brought pursuant to 42 U.S.C. § 1983.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE